UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------- x

KRASNYI OKTYABR, INC. (a/k/a, "Red
October"),

      Plaintiff,

    -against-

TRILINI IMPORTS, TRILINI
INTERNATIONAL IMPORTS, LLC,
INTERPAGE INTERNATIONAL LLC,
TRILINI INTERNATIONAL LTD., ROMAN
KATSNELSON, LEONID KERZHNER,
MALVINA KERZHNER, and "JOHN DOE"
DEFENDANTS 1-10, being the
remaining principals, officers,
directors, members and stockholders
of the corporate defendants,

      Defendants.
---------------------------------- x

MEMORANDUM AND ORDER
Civil Action No.
CV-05-5359

TRAGER, J.

    Plaintiff Krasnyi Oktyabr ("Red October" or "plaintiff")

commenced this action against Trilini Imports, et al.

("defendants") alleging trademark infringement in violation of

Section 32(1) of the Lanham Act, 15 U.S.C. § 1114 and Section

43(a) of the Lanham Act, 15 U.S.C. § 1125.  Red October also

asserts state law claims for unfair competition, injurious

falsehood, anti-dilution and tortious interference.  Pursuant to

Rule 12(b)(1), defendants move to dismiss Red October's action

for lack of standing as to the two Lanham Act causes of action.

In addition, defendants move pursuant to Rule 12(b)(6) to dismiss

Red October's entire action for failing in all counts to state a

claim upon which relief could be granted.

Red October filed its complaint on November 15, 2005 and concurrently filed an application for a temporary restraining order, to which it attached exhibits consisting of letters, affidavits, and its contractual agreements concerning the trademarks at issue ("the exhibits").  Its electronic filing of these documents linked the exhibits to the complaint.  Whether or not the exhibits were meant to be attached to the complaint, they will be considered for the purposes of this motion to dismiss. Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993) (noting that documents attached to the complaint as an exhibit or incorporated in it by reference and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit" may be considered for Rule 12(b)(6) purposes (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991), cert. denied, 503 U.S. 960 (1992))); see also Greene v. WCI Holdings Corp., 956 F. Supp. 509, 512 (S.D.N.Y. 1997).  The following facts are taken from the complaint and the exhibits.

## Background

Plaintiff is a Brooklyn-based importer and distributor of high-end Russian grocery items, including Russian candy marketed under the Krasnyi Oktyabr, Rot Front and Babeyevsky trademarks.

Complaint ("Compl.") ¶¶ 2, 4. Defendants are also New York-based importers and distributors of Russian goods. Compl. ¶¶ 5-8, 26.

Obeyediyonne Conditery ("United Confectioners") is a Russian holding company which owns and runs Moscow Confectionary Factory of Krasnyi Oktyabr ("Red October Moscow"), Rot Front and Confectionary Concern Babayevsky ("CCB"), the manufacturers, respectively, of the Krasnyi Oktyabr, Rot Front and Babeyevsky brands of candy. Compl. ¶¶ 2, 4. Within the former republics of the Soviet Union, the candies made by United Confectioners' companies have a reputation as premium products. Compl. ¶¶ 15, 21; Kachura Aff. ¶ 4.

On April 9, 1996, Red October entered into a licensing agreement with Red October Moscow granting Red October the exclusive right to sell Krasnyi Oktyabr chocolate and confectionary products to the "Russian ethnic market" in the United States. Nosenko Aff. ¶ 2. In late 1999, Red October obtained a United States trademark for "Krasnyi Oktyabr" from the United States Patent and Trademark Office. Compl. ¶ 18. Acting on behalf of United Confectioners, on April 5, 2005, Rot Front entered into an additional licensing agreement with Red October, granting Red October the exclusive right to sell the Krasnyi Oktyabr, Rot Front and Babeyevsky brands of candy to the U.S. Russian ethnic market. Nosenko Aff. ¶ 3. Pursuant to this agreement, Red October assigned the Krasnyi Oktyabr trademark to

Red October Moscow in exchange for the exclusive right to use and enforce the trademark.  Nosenko Aff. ¶ 4.

Red October alleges that, starting around April 5, 2005, defendants began to import and sell Krasnyi Oktyabr, Rot Front and Babayevsky chocolate bars and confections in the United States at a below-market prices.  Kachura Aff. ¶¶ 12, 17.  Red October Moscow, Rot Front and CCB have informed Red October that they did not sell the goods directly to defendants, so Red October surmises that defendants bought the goods second- or third-hand on the gray-market.  Kachura Aff. ¶ 17.  Red October alleges that the goods being sold by defendants appear indistinguishable from the actual goods for which Red October holds exclusive distribution rights for the U.S. Russian ethnic market, but, because they are not subject to Red October's quality controls, they are likely to be stale or sold after their expiration date.  Compl. ¶ 26; Kachura Aff. ¶ 17.  Red October additionally claims that defendants' sale of low quality goods bearing the Krasnyi Oktyabr, Rot Front and Babeyevsky trademarks will damage the brands' reputation as premium-quality goods. Kachura Aff. ¶¶ 17-18.

On May 26, 2005 and again on September 19, 2005, Red October sent cease and desist letters to defendants.  Compl. ¶ 27.  Red October alleges that one defendant advised plaintiff's counsel that in order to avoid detection of the disputed conduct, he

could create a new company with which to import and sell the gray market goods in dispute (Compl. § 30); that defendants did in fact create a new company for that purpose (Compl. §§ 28, 31); and that defendants continue sell Krasnyi Oktyabr, Rot Front and Babeyevsky candy (Compl. §§ 26, 37). Red October further alleges that several of its customers have declined to purchase candy from them because the customers had already purchased from defendants. Kachura Aff. ¶¶ 14-15.

## Discussion

### (1)

### Plaintiff's Standing Under the Lanham Act

Defendants move to dismiss Red October's trademark infringement claim under Section 32 of the Lanham Act, 15 U.S.C. § 1114, and false designation of origin and importation, unregistered trade dress claim under Section 43 of the Lanham Act, 15 U.S.C. § 1125, for <u>inter</u> <u>alia</u>, lack of standing.

"Because standing is challenged on the basis of the pleadings, we accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." <u>Connecticut v. Physicians Health Servs. of Connecticut Inc.</u>, 287 F.3d 110, 114 (2d Cir. 2002) (citing <u>United States v. Vazquez</u>, 145 F.3d 74, 81 (2d Cir. 1998) (internal quotations omitted). Red October's complaint alleges facts

sufficient, pursuant to Fed. R. Civ. P. 12(b)(1), to establish standing in order to bring its claims under both Section 32 and Section 43 of the Lanham Act.

**(a)**

**Plaintiff's Standing under Section 32 of the Lanham Act**

Defendants move to dismiss Red October's claim under section 32 of the Lanham Act, in part, for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1). "The Lanham Act (15 U.S.C. § 1114(1)) provides that an action for trademark infringement may only be brought by the 'registrant,' and further defines that term [in 15 U.S.C. § 1127] to include the legal representatives, predecessors, successors and assigns of the registrant." <u>DEP Corp. v. Interstate Cigar Co. Inc.</u>, 622 F.2d 621, 622 (2d Cir. 1980). Red October claims standing under Section 32 both as exclusive licensee of the trademarks at issue and as the designated legal representative of the trademark owners. Defendants aver that Red October cannot be considered a registrant as defined by 15 U.S.C. § 1127.

**a.    Exclusive license**

First, Red October alleges that pursuant to its two separate licensing agreements with United Confectioners, one entered into on or about April 9, 1996, and the other on or about April 5, 2005, it obtained an exclusive license from United Confectioners

to sell three separate brands of candy manufactured in Russia ("Krasnyi Oktyabr", "Rot Front" and "Babayevsky") in the "Russian ethnic market" in the United States. Compl. ¶ 14. Red October attaches copies of both licensing agreements to its complaint. Nosenko Aff. ¶¶ 2, 4. In unique situations, an exclusive licensee maybe considered an assignee pursuant to 15 U.S.C. § 1127's definition of registrant. See Fin. Inv. Co. v. Geberit AG, 165 F.3d 526, 531-32 (7th Cir. 1998). "[A] truly exclusive licensee, one who has the right even to exclude his licensor from using the mark . . . is equated with an assign[ee] since no right to use [the mark] is reserved to the licensor, and the licensee's standing drives from his presumed status as assignee." Id. (citing 3 Jerome Gilson, Trademark Protection & Practice § 8.16[1][b] (1997)). "However, those cases finding standing for de facto assignees are the exceptions that prove the rule — namely, that only the registrant of a trademark or its legal representatives, predecessors, successors, and assigns have standing to sue for trademark infringement under § 1114." Calvin Klein Jeanswear Co. v. Tunnel Trading, No. 98 Civ. 5408, 2001 WL 1456577, at *4 (S.D.N.Y. Nov 16, 2001) (collecting cases). Moreover, "[w]here a licensing agreement does not grant the licensee a property interest in the mark or otherwise assign to the licensee the registrant-licensor's ownership rights, the licensee, even if exclusive, cannot enforce the mark under

§ 1114." <u>Id.</u> at *4.

In the present case, pursuant to the April 5, 2005 licensing agreement, which is the relevant one for the purpose of evaluating the alleged trademark infringement, it is clear that Red October does not have the right to exclude United Confectioners from any trademark that Red October is licensed to use. Paragraphs 2.2 and 2.3 of the April 5, 2005 agreement grant Red October the right to use the trademarks of, and the exclusive right to distribute, United Confectioners' products ("Krasnyi Oktybr", "Rot Front" and "Babayevsky") to the "Russian Ethnic Market" for the duration of the contract. Paragraph 2.2 of the agreement specifies:

> According to the terms of the present agreement the Distributor has the right for import to the USA of products of the trademarks stated in paragraph 2.3 of the present agreement, and has the right to distribute designated products on the territory of the USA exclusively in the areas determined by the present agreement, by which its exclusive rights as the Distributor are confirmed by the present on the designated territory and designated selling enterprises.

However, ¶ 2.1 of the agreement specifically bars Red October from selling United Confectioners' goods in "American sales networks or other sales networks which are not specially oriented to the Russian-speaking consumers." In addition, ¶ 2.13 of the agreement specifies that in the event United Confectioners decides to sell its products to selling networks in the United States that are outside the Russian ethnic market, Red October

has the primary right to participate in such sales. The language from ¶ 2.13 reads as follows:

> In case the Company [United Confectioners] makes a decision about supplying of the products of the Company to the selling networks in the territory of the USA the Distributor has the primary right for participation with the Company in the joint supply of the products of the Company to the selling networks in the territory of the USA.

¶ 2.13 makes clear that United Confectioners has retained the ownership in all of its trademarks and even the discretion to license these trademarks to other parties that may potentially sell them outside the Russian ethnic market in the United States. Therefore, Red October's tenuous status as exclusive licensee does not provide it with standing to sue as a registrant under Section 32 of the Lanham Act.[1]

**b.    Legal representative**

In the alternative, Red October alleges in its complaint that it is required by the licensing agreements to protect the disputed trademarks and enforce its rights to the trademarks as United Confectioners' agent. Compl. ¶ 20. 15 U.S.C. § 1127 defines registrant to include the legal representatives of the

---

[1] Because the terms of the April 5, 2005 agreement are unambiguous with respect to Red October's trademark rights as an exclusive licensee, it is unnecessary to delve into contract interpretation, which could be potentially quite complicated here, where the contract was apparently formed under Russian law. 2005 Agreement, ¶ 6.14 ("The rights and responsibilities of the Parties concerning this agreement are regulated pursuant to the legislation of the Russian Federation.").

registrant. Despite the plain language of the statute, plaintiff
has cited no case and this court has found none within the Second
Circuit in which a court recognized a plaintiff's standing based
on its status as a legal representative of the trademark holder.
However, some district courts, including one within the Second
Circuit, have in dicta recognized that the legal representatives
of a trademark holder may have standing to bring a claim under
Sections 32 and 43 of the Lanham Act.  "A licensee may be
considered a legal representative where the agreements between
the parties expressly provide the licensee with a right and duty
to sue on all issues relating to the trademark." Visa U.S.A.,
Inc. v. First Data Corp., No. C 02-01786, 2005 U.S. Dist. LEXIS
37276, at *13-14 (N.D. Cal. Aug. 16, 2005) (finding that the
plaintiff lacked standing because it did not have the exclusive
right to enforce the trademark); see also Silverstar Enterprises,
Inc. v. Aday, 537 F. Supp. 236 (S.D.N.Y. 1982).  In Silverstar,
the court recognized that the plaintiff could conceivably have
had standing as a legal representative under the Lanham Act if
plaintiff was not suing the party who itself designated plaintiff
as its legal representative. Silverstar, 537 F. Supp. 236, 240
n.4.  In addition, a Texas district court recognized a
plaintiff's standing to sue under §§ 32 and 43 of the Lanham Act
where the license agreement between a trust and the plaintiff
"clearly contemplate[d] that Plaintiff may bring suit against

10

infringers of marks entrusted to the Trust."  Nat'l Football

League Properties v. Playoff Corp., 808 F. Supp. 1288, 1291 n.2

(N.D. Tex. 1992).

In present case, paragraph 6.1 of the April 5, 2005

agreement gives Red October "the right to use aforesaid

trademarks in the advertising of its activity, name of the

Distributor [(Red October)] and for protection of its exclusive

rights."  Furthermore, S.M. Nosenko, Managing Director of United

Confectioners, clarified the intent of the April 5, 2005

agreement in his affidavit, which was attached as an exhibit to

the complaint.  Nosenko Aff. ¶¶ 5-6 explains:

> 5. The purpose of the agreements was to provide "Red
> October USA" the exclusive right to sell the products
> made by OAO "Red October," OAO "Rot Front," and OAO
> "Babayevsky" to ethnic Russian groups within the US
> market including the right and the duty of "Red October
> USA" to commence the enforcement actions with respect
> to the trademarks against any party for the
> infringement upon the exclusive rights of "Red October
> USA" to use these trademarks among ethnic Russian
> groups in the US market.

> 6. If any court, for any reason whatsoever, shall
> determine that the above agreements do not grant "Red
> October USA" the right to commence such enforcement
> actions with respect to the trademarks, this position
> will serve as a permit issued by OOO "United
> Confectioners," effective as of April 5, 2005 for
> trademarks of OAO "Rot Front" and OAO "Babayevsky", and
> as of August 8, 2005 for the trademarks of OAO "Red
> October," authorizing "Red October USA" to act as an
> agent for products made by OAO "Red October," OAO "Rot
> Front," and OAO "Babayevsky" in the matter of
> exercising full rights and remedies in accordance with
> the provisions of its trademarks, including any pending
> civil actions, and any and all similar actions that may
> be initiated in the future.

Construing the complaint in favor of Red October, and considering the language of the April 5, 2005 licensing agreement and the Nosenko affidavit, Red October has sufficiently alleged standing as a legal representative of United Confectioners.

## (b)

**Plaintiff's standing under Section 43 of the Lanham Act**

Defendants also challenge Red October's standing under Section 43 of the Lanham Act.

> To establish standing for a false advertising claim under section 1125(a) of the Lanham Act, the aggrieved party must demonstrate "a reasonable interest to be protected against the advertiser's false or misleading claims, and a reasonable basis for believing that this interest is likely to be damaged by the false or misleading advertising."

Societe Des Hotels Meridien v. LaSalle Hotel Operating Partnership, 380 F.3d 126, 130 (2d. Cir. 2004) (citing Ortho Pharm. Corp. v. Cosprophar, Inc., 32 F.3d 690, 694 (2d Cir. 1994)).

> Unlike Section 32 of the Lanham Act, which grants a right of action solely to the registrant of a trademark, Section 43(a) permits 'any person who believes that he or she is likely to be damaged' by the proscribed conduct to bring a civil action. 15 U.S.C. § 1125(a). Courts have consistently recognized that this broad language confers standing on trademark licensees.

Calvin Klein Jeanswear Co., 2001 WL 1456577, at *5. "Therefore, a plaintiff who can demonstrate that it has the potential for a

12

commercial or competitive injury, . . . or, in other words, that the false designation of defendant's product is likely to cause plaintiff to suffer a loss in sales, has standing to bring a suit for injunctive relief."  Havana Club Holding, S.A. v. Galleon, S.A., 62 F. Supp. 2d 1085, 1097 (S.D.N.Y. 1999) (internal quotation omitted) (finding no standing because the plaintiff could not lose any sales as a result of defendant's competition, as plaintiff was prevented from importing its products to America in any event because of a trade embargo); see also, Johnson & Johnson v. Carter-Wallace,Inc., 631 F.2d 186, 190 (2d Cir. 1980) (finding standing where the court determined that it was likely that defendant's use of baby oil in NAIR and its related advertising campaign caused or would cause a loss of defendants' sales).

Here, Red October has standing under Section 43 of the Lanham Act.  Red October alleges in its complaint that (1) it has an exclusive license to sell three separate brands of candy ("Krasnyi Oktybr," "Rot Front" and "Babayevsky") in the Russian ethnic market of the United States (Compl. ¶ 14.); (2) starting on or about April 5, 2005, defendants have engaged in selling chocolate bars and other confections bearing the "Krasnyi Oktybr," "Rot Front" and "Babayevsky" trademarks (Compl. ¶ 26); (3) defendants do not have a license to use, adopt or employ the trademarks for commercial gain (Compl. ¶ 34.); and

(4) defendants' conduct has caused and continues to cause
confusion in the consuming public and damage to Red October
(Compl. ¶ 38.).   Although in its complaint Red October elaborates
with greater specificity how defendants' unauthorized use of the
disputed trademarks is confusing and damaging (Compl. ¶¶ 54-57),
the allegations listed above sufficiently plead that the false
designation of defendants' product is likely to cause plaintiff
to suffer a loss in sales.   See Johnson & Johnson, 631 F.2d at
190 (2d Cir. 1980).   Therefore, Red October has standing to sue
defendants under Section 43 of the Lanham Act.


## (2)

### Sufficiency of plaintiff's claims

Defendants additionally move to dismiss Red October's
complaint for failing in all counts to state a claim upon which
relief can be granted pursuant to Rule 12(b)(6).   A district
court may grant a motion to dismiss for failure to state a claim
only if "it appears beyond doubt that the plaintiff can prove no
set of facts in support of his claim which would entitle him to
relief."  D'Alessio v. New York Stock Exchange, 258 F.3d 93, 99
(2d Cir. 2001).   Therefore, before granting a motion to dismiss,
this court must accept as true all of the factual allegations set
out in plaintiff's complaint, draw inferences from those
allegations in the light most favorable to plaintiff, and

construe the complaint liberally.  Leibowitz v. Cornell Univ.,
445 F.3d 586, 590 (2d Cir. 2006).  In addition, in deciding a
motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court may
consider documents attached to the complaint as an exhibit or
incorporated in it by reference, matters of which judicial notice
may be taken, and documents either in plaintiffs' possession or
of which plaintiffs had knowledge and relied on in bringing suit.
Brass, 987 F.2d 142, 150 (2d Cir. 1993) (citing Cortec Indus.,
Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991)).
Reading the complaint in light of the rules set forth above, Red
October has alleged proper claims in all counts.


**a.   Plaintiff's claim under Section 32 of the Lanham Act**

Under 15 U.S.C. § 1114(1)(a),

(1)[a]ny person who shall, without the consent of the
registrant--

(a) use in commerce any reproduction, counterfeit,
copy, or colorable imitation of a registered mark in
connection with the sale, offering for sale,
distribution, or advertising of any goods or services
in connection with which such use is likely to cause
confusion, or to cause mistake, or to deceive . . .
shall be liable in a civil action by the registrant for
the remedies hereinafter provided.

Defendant contends that Red October has failed to state a
claim under 15 U.S.C. § 1114(1)(a), because (1) Red October does
not have an exclusive territorial right to use the trademarks in
question; (2) the Lanham Act provides no basis to prevent the

15

importation of "gray-market"[2] goods where the goods are genuine
and in this case, the goods are genuine and not materially
different from Red October's goods; and (3) the First-Sale
Doctrine protects defendants from liability.  Defendants' first
argument can be easily disposed of because, as discussed above,
Red October has standing to bring this claim as a legal
representative of United Confectioners and thus, need not allege
that it has an exclusive territorial right to the disputed
trademarks.  Defendants' third argument can also be disposed of
summarily because, accepting the allegations of the complaint as
true, there is no evidence in the record on this motion to
dismiss that the First-Sale Doctrine protects defendants from
liability.  As to defendants' second argument, whether the goods
are genuine or not is significant because if defendants' goods
are genuine, there is no likelihood that consumers will be
confused as to the origins of defendants' product.

Defendant is correct that "[a]s a general rule, trademark
law does not reach the sale of genuine goods bearing a true mark
even though the sale is not authorized by the mark owner."

---

[2] "Gray market goods are 'goods made by a foreign
manufacturer, legitimately sold abroad under a particular
trademark, . . . imported into the United States and sold in
competition with goods of the owner of [the United States]
trademark rights in the identical  mark.'"  <u>Helene Curtis v.
National Wholesale Liquidators, Inc.</u>, 890 F. Supp. 152, 154
(E.D.N.Y. 1995) (citing <u>Dial Corp. v. Encina Corp.</u>, 643 F. Supp.
951, 952 (S.D. Fla. 1986)).

Polymer Tech. Corp. v. Mimran, 975 F.2d 58, 61 (2d Cir. 1992)

(citing NEC Elecs. v. Cal Circuit Abco, 810 F.2d 1506, 1509 (9th

Cir. 1987)). However, in this case, Red October disputes that

defendants' goods are genuine. The Second Circuit has

established two standards to determine whether goods are genuine:

The quality control standard and the intended for U.S.

sale/material differences standard. See Helene Curtis v.

National Wholesale Liquidators, Inc., 890 F. Supp 152, 157-158

(E.D.N.Y. 1995).

Red October has alleged facts that state a claim under the

quality control standard. In El Greco Leather Prods. Co., Inc.

v. Shoe World, 806 F.2d 392, 395 (2d Cir. 1986), the Second

Circuit held that where a trademark holder could not control the

quality of the goods sold by a distributor, the goods would not

be considered genuine. "One of the most valuable and important

protections afforded by the Lanham Act is the right to control

the quality of the goods manufactured and sold under the holder's

trademark." El Greco, 806 F.2d at 395 (citing Menendez v. Faber,

345 F. Supp. 527 (S.D.N.Y. 1972)). "For this purpose the actual

quality of the goods is irrelevant; it is the control of quality

that a trademark holder is entitled to maintain." Id. (citing

Pro. Golfers Assoc. of Am. v. Bankers Life & Casualty Co., 514

F.2d 665, 670-71 (5th Cir. 1975)); see also Polymer Technology

Corp, 975 F.2d 58, 62.

> Thus, [g]oods . . . that do not meet the trademark
> owner's quality control standards will not be
> considered genuine goods, and their sale will
> constitute trademark infringement, for the sale of such
> goods could mislead consumers into believing that the
> trademark owner had approved the goods for domestic
> sale.

Helene Curtis, 890 F. Supp. at 157 (E.D.N.Y. 1995) (internal

quotations and citations omitted).  Here, Red October alleges in

its complaint that with regard to the defendants' unauthorized

sale of goods, "Red October is not able to control the quality of

the goods sold, the manner in which the goods are stored, the

sale of expired product or method of marketing or sale of these

goods."  Compl. ¶ 26.  Red October further alleges that

"Defendants sell product which is not properly stored, which is

expired and which in countless other ways fails to comply with

Red October's quality standards."  Compl. ¶ 32.  Because Red

October is charged with ensuring specific quality control

standards pursuant to the April 5, 2005 agreement with United

Confectioners (the trademark holder) (¶¶ 4.1-4.3), it may be

inferred that "Red October's quality standards" referred to in

the complaint are in fact the trademark holder's quality control

standards.  Accepting as true all of the factual allegations set

out in plaintiff's complaint, and drawing inferences from those

allegations in the light most favorable to plaintiff, Red October

has alleged that defendants' goods are not genuine.  Therefore,

Red October has adequately alleged that the sale of defendants'

goods could mislead consumers into believing that the trademark

owner had approved the goods for domestic sale, the result of

which would be consumer confusion.  <u>See</u> <u>Helene Curtis.</u>, 890 F.

Supp. at 157.  As a result, defendants' motion to dismiss Red

October's claim under Section 32 of the Lanham Act is denied.[3]


**b.    Plaintiff's claim under Section 43 of the Lanham Act**

Defendants contend that Red October has not stated a claim

under Section 43 of the Lanham Act, 15 U.S.C. § 1125, because,

defendants argue, Red October has not alleged that the trade

dress of defendants' products is materially different from the

trade dress of Red October's goods.  This argument is nearly

---

[3] The second standard the Second Circuit has used to
determine whether goods are genuine is the Intended for U.S.
Sale/Material Differences standard.  Under this standard, gray
market goods violate the Lanham Act if the goods "(1) are not
intended to be sold in the United States, and (2) are materially
different from the authentic goods that are authorized for sale
in the U.S. market."  <u>Helene Curtis</u>, 890 F. Supp. at 158.  While
Red October has alleged facts that support the inference that
defendants' goods are not meant for sale inside the United
States, it has not alleged sufficient facts to support the
inference that there are material differences between its
products and defendants' products.  Red October has requested
that it be granted leave to amend its complaint to allege
material differences between defendants' products and its own if
its claim under Section 32 of the Lanham Act is dismissed.
However, as Red October has alleged facts necessary to state a
claim under the quality control standard, it need not amend its
complaint to overcome defendants' motion to dismiss.  It may,
however, move for leave to amend, either now or before trial to
conform its complaint to evidence.

identical to defendants' argument for dismissing Red October's complaint under 15 U.S.C § 1114 and can be disposed of summarily. Because the elements required to succeed on infringement under 15 U.S.C. § 1114 and unfair competition under 15 U.S.C. § 1125[4] are virtually the same, the analysis above with respect to Red October's claims under 15 U.S.C. § 1114 applies with equal force to its claims under 15 U.S.C. § 1125. See Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867 (2d Cir. 1986) ("[I]n either a claim of trademark infringement under § 32 or a claim of unfair competition under § 43, a prima facie case is made out by showing the use of one's trademark by another in a way that is likely to confuse consumers as to the source of the product."); Calvin Klein Jeanswear Co., 2001 WL 1456577, at *6, n.4. Therefore, Red October has stated a claim under Section 43 of the Lanham Act.

---

[4] 15 U.S.C. § 1125 provides:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

### c. Plaintiff's claim for common law trademark infringement and unfair competition

#### i. Common law trademark infringement

Defendants move to dismiss Red October's claim for common law trademark infringement for lack of standing. This argument parallels defendants' argument that Red October does not have standing to sue under the Lanham Act because Red October is not the owner of the mark. Defendant cites Quabug Rubber Co. v. Fabiano Shoe Co., Inc., 567 F.2d 154, 160 (1st Cir. 1977), for this proposition. However, as plaintiff points out, more recent case law within the Second Circuit has been more flexible. "Where standing is not limited by statute or by contract with the trademark owner, . . . it is sufficient that a plaintiff own an exclusive distributorship for a product sold under the trademark." Business Trends Analysts v. Freedonia Group, Inc., 650 F. Supp. 1452, 1457-58 (S.D.N.Y. 1987) (citing G.H. Mumm Champagne v. Eastern Wine Corp., 142 F.2d 499, 502 (2d Cir. 1944))). [T]he absence of the trademark's 'owner' in the instant case does not prevent a plaintiff with a concrete interest in protecting the mark from bringing suit." Id. at 1458.

Red October sufficiently pled its claim for common law trademark infringement. Although Red October's status as exclusive licensee does not grant it standing to sue under Section 32 of the Lanham Act, ¶ 2.2 of the April 5, 2005 contract

between United Confectioners and Red October designates Red
October as an exclusive distributor of the trademarked goods in
dispute.  In addition, Red October has alleged a concrete
interest in protecting the marks both for its own pecuniary
interest (Compl. ¶¶ 20, 34) and as United Confectioners' (the
trademarks' owner) legal representative.  Compl. ¶¶ 36-38.
Therefore, Red October has alleged facts to endow it with
standing to bring its § 22 claim for common law trademark
infringement and thus withstand defendants' motion to dismiss.


   **ii. Unfair Competition**

   Defendants move to dismiss Red October's claim for common
law unfair competition on grounds that Red October has not pled
the necessary elements of the tort.  In particular, defendants'
characterization of Red October's allegations is spurious.  Defs'
Mem. at 16 ("Plaintiff has only alleged that Defendants are
selling the same goods as it is.").  As agreed upon by both
parties, in order to plead a claim for common law unfair
competition, Red October must allege (1) either actual confusion
to recover damages or a likelihood of confusion where equitable
relief is sought, <u>W.W.W. Pharm. Co. v. Gillette Co.</u>, 984 F.2d
567, 576 (2d Cir. 1993), limited on other grounds by <u>Deere & Co.
v. MTD Prods., Inc.</u>, 41 F.3d 39 (2d Cir. 1994), and (2) bad
faith, <u>see</u> <u>Saratoga Vichy Spring Co. v. Lehman</u>, 625 F.2d 1037,

1044 (2d Cir. 1980); <u>Greenblatt v. Prescription Plan Servs.</u>
<u>Corp.</u>, 783 F. Supp. 814, 825 (S.D.N.Y. 1992).  Red October
alleges both these elements in its complaint.  The first element
mirrors the confusion element under both Sections 32 and 43 of
the Lanham Act.  <u>See</u> <u>W.W.W. Pharm.</u> 984 F.2d at 576.  Therefore,
defendants' argument that their goods do not cause confusion
because they are the same or "genuine" can be easily disposed of
under the Lanham Act analysis above.  In addition, paragraphs 54-
58 of Red October's complaint explicitly allege that defendants'
use of the Krasnyi Oktyabr, Rot Front and Babayevsky marks have
caused confusion and are likely to continue to cause confusion to
both direct purchasers and end consumers, which ultimately
resulted and will continue to result in damages to Red October.

Bad faith, the second element, must be pled to make out a
cause for common law unfair competition because it is "central"
to the "essence of an unfair competition claim under New York
law," which "is that the defendant has misappropriated the labors
and expenditures of another." <u>Saratoga</u>, 625 F.2d at 1044.  In
paragraphs 25, 27-31, 37-38, and 54-58 of Red October's
complaint, Red October alleges not only that defendants
misappropriated its labors and expenditures but also the
essential element of bad faith.  Because "awareness can give rise
to an inference of bad faith," <u>Centaur Commc'ns, Ltd. v. A/S/M</u>
<u>Commc'ns, Inc.</u>, 830 F.2d 1217, 1228 (2d Cir. 1989), Red October's

allegations that it demanded that defendants cease violating the trademarks in question (Compl. §§ 27, 28); that one defendant advised plaintiff's counsel that in order to avoid detection of the disputed conduct he could create a new company with which to import and sell the gray market goods in dispute (Compl. § 30); that defendants did in fact create a new company for that purpose (Compl. §§ 28, 31); and that defendants continue to carry out the disputed conduct (Compl. § 37) sufficiently allege that defendants exercised bad faith.  Therefore, defendants' motion to dismiss Red October's claim for common law unfair competition is denied.

### d.    Plaintiff's claims under N.Y. Gen. Bus. Law § 349

Defendants move to dismiss Red October's claim under N.Y. Gen. Bus. Law § 349.  The statute proscribes "[d]eceptive acts or practices in the conduct of any business, trade or commerce [. . .]."  N.Y. Gen. Bus. Law § 349.  The statute allows "any person who has been injured by reason of any violation of this section" to "bring an action in his own name to enjoin such unlawful act or practice" and/or "an action to recover his actual damages." Id.  "To establish [a] prima facie violation of General Business Law § 349, a plaintiff must demonstrate that a defendant is engaging in consumer-oriented conduct which is deceptive or misleading in a material way, and that the plaintiff has been

injured because of it." <u>Weiss v. Polymer Plastics Corp.</u>, 21 A.D. 3d 1095, 1097, 802 N.Y.S. 2d 174, 176 (2d Dep't 2005) (citing <u>Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank</u>, 85 N.Y.2d 20, 25, 647 N.E.2d 741, 623 N.Y.S. 2d 529 (1995)). "[D]eceptive acts" are defined "objectively as acts that are 'likely to mislead a reasonable consumer acting reasonably under the circumstances." <u>Id.</u> (quoting <u>Oswego Laborers' Local 214 Pension Fund</u>, 85 N.Y.2d at 26.) "While it is true that the courts have found that the primary focus of these laws is consumer protection . . . it is also true that the courts have held that competitors have standing to challenge deceptive practices under Sections 349 and 350 so long as 'some harm to the public at large is at issue.'" <u>In re Houbigant Inc.</u>, 914 F. Supp. 964, 983 (S.D.N.Y. 1995) (citing <u>Weight Watchers Int'l., Inc. v. Stouffer Corp.</u>, 744 F. Supp. 1259, 1284 (S.D.N.Y. 1990)).

Defendants argue that Red October has not alleged a claim under § 349 because it failed to allege that consumers look to Red October as a source of the disputed goods; failed to allege that Red October's damages are related to competition in the market place; and defendants' goods are genuine and, therefore, defendants cannot have engaged in deceptive practices directed against its consumers. These arguments fail.

Defendants' argument regarding genuineness can be rejected pursuant to the above discussion regarding quality control

standards.  In addition, Red October has alleged defendants'
deceptive acts were directed at consumers.  "[D]eceptive acts"
are defined "objectively as acts that are 'likely to mislead a
reasonable consumer acting reasonably under the circumstances."
Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000).  Red
October alleges in at least two paragraphs of its complaint that
defendants' actions were materially misleading, and therefore,
deceptive.  In paragraph 48 of its complaint, Red October alleges
that defendants' acts "are likely to cause confusion, mistake or
deception as to the affiliation, connection or association with
Red October, Krasnyi Oktyabr, Moscow, Rot Front, CCB and/or as to
the origin, sponsorship or approval of Defendants' goods or
commercial activities by Red October, Krasnyi Octyabr Moscow, Rot
Front and/or CCB."  In paragraph 62, Red October alleges that
"[i]ncluded in such misleading advertisement is Defendants' use
of Krasnyi Oktyabr, Rot Front and Babyevsky Marks stating an
affiliation with Red October that Defendants do not have."  Taken
alone, each paragraph alleges that defendants' acts are likely to
mislead a reasonable consumer acting reasonably, making the
actions materially misleading and, therefore, deceptive.
Moreover, Red October repeatedly alleges that defendants' actions
cause confusion, mistake, and/or deception in the minds of the
public.  Compl. ¶¶ 37-38, 41-44, 48, 51, 54-57, 59-62.  Thus, Red
October has alleged that defendants' deceptive actions are

directed toward consumers. Therefore, Red October has made out the first element of a claim under § 349.

The remaining element that Red October must allege in order to state a claim under § 349 is that it has been injured as a result of defendants' actions. <u>Weiss</u>, 21 A.D.3d at 1097, 802 N.Y.S.2d at 176. Red October also repeatedly alleges this element throughout its complaint. Compl. ¶¶ 37-38, 41-44, 48, 51, 54-57, 59-62. Defendants' arguments to the contrary are unavailing. Defendants' contentions that Red October (1) failed to allege that consumers look to Red October as a source of the disputed goods; and (2) failed to allege that Red October's damages are related to competition in the marketplace are simply at odds with what Red October actually alleged in its complaint.[5]

Finally, the complaint must allege "consumer injury or harm to the public interest." <u>See</u> <u>Maurizio</u>, 230 F.3d at 522 (quoting <u>Azby Brokerage, Inc. v. Allstate Ins. Co.</u>, 681 F. Supp. 1084, 1089 n.6 (S.D.N.Y. 1998)). In this case, Red October's

---

[5] For example, Red October's allegation in ¶ 56 that "Defendants' continued free-riding upon the goodwill created by Red October . . . trades upon the favorable reputation and proprietary rights of Red October . . . ." gives rise to the inference that consumers look to Red October as the source of the goods. Moreover, Red October's allegation in ¶ 55 that "Defendants' wrongful conduct constitutes misappropriation of the goodwill created and developed by Red October in the Krasnyi Oktyabr, Rot Front and Babayevsky Marks after the expenditure of considerable time, effort and expense, giving Defendants an unfair competitive advantage by allowing them to wrongfully ride on Red October's coattails" clearly alleges that Red October's damages are related to competition in the marketplace.

allegations give rise to an inference of consumer harm.  Red
October alleged in paragraphs 26 and 32 of its complaint that
defendants do not comply with the quality control standards
prescribed by the trademark owner.  Therefore, according to Red
October, when consumers buy defendants' goods, they may be misled
into believing that the goods meet the quality control standards
that consumers associate with the trademark holder's products,
resulting in a cognizable injury.  Accordingly, Red October has
alleged the necessary elements to state a claim under N.Y. Gen.
Bus. Law § 349.

**e.  Plaintiff's claims under N.Y. Gen. Bus. Law § 350**

Defendants move to dismiss plaintiff's claim under N.Y. Gen.
Bus. Law § 350.  This section of the New York General Business
Law proscribes "[f]alse advertising in the conduct of any
business, trade or commerce."  N.Y. Gen. Bus. Law § 350.[6]  Like

---

[6] Under § 350(a):

[t]he term 'false advertising' means advertising,
including labeling, of a commodity, or of the kind,
character, terms or conditions of any employment
opportunity if such advertising is misleading in a
material respect.  In determining whether any
advertising is misleading, there shall be taken into
account (among other things) not only representations
made by statement, word, design, device, sound or any
combination thereof, but also the extent to which the
advertising fails to reveal facts material in the light
of such representations with respect to the commodity
or employment to which the advertising relates under
the conditions prescribed in said advertisement, or

28

§ 349, under § 350(e)"[a]ny person who has been injured by reason of any violation of section three hundred fifty or three hundred fifty-a of this article may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages." N.Y. Gen. Bus. Law § 350. "The standards for deceptive business practices under section 349 of the General Business Law are substantively identical to those for false advertising under section 350." C.V. Starr & Co., Inc. v. American Int'l Group, No. 06-CV-2157, 2006 WL 2627565, at *3 n.9 (S.D.N.Y. Sept. 14, 2006) (citing Goshen v. Mutual Life Ins. Co. of N.Y., 98 N.Y.2d 314, 324 n.1, 774 N.E.2d 1190, 1195, 746 N.Y.S.2d 858, 863 (2002)). Here, Red October has alleged that defendants' use of the disputed trademarks constitutes false advertising under § 350. Compl. ¶ 62. Because Red October has pled the necessary elements of § 349, which are substantively identical to those needed to make out a claim under § 350, its claim under § 350 will not be dismissed.

f.  **Plaintiff's claims under N.Y. Gen. Bus. Law § 368-d**

Defendants move to dismiss Red October's claim for trademark dilution under N.Y. Gen. Bus. Law § 368-d.[7] § 368-d mandates

---

under such conditions as are customary or usual.

[7] In Red October's complaint it made a claim out under N.Y. Gen. Bus. Law § 368-d but mistakenly labeled it § 360-I, which

that

> Likelihood of injury to business reputation or of
> dilution of the distinctive quality of a mark or trade
> name shall be a ground for injunctive relief in cases
> of infringement of a mark registered or not registered
> or in cases of unfair competition, notwithstanding the
> absence of competition between the parties or the
> absence of confusion as to the source or services.

"In order to prevail on a section 368-d dilution claim, a plaintiff must prove, first, that its trademark either is of truly distinctive quality or has acquired secondary meaning, and, second, that there is a 'likelihood of dilution.'" Deere & Co. v. MTD Prods., Inc., 41 F.3d 39, 42 (2d Cir. 1994). The Second Circuit "has defined dilution under section 368-d 'as either the blurring of a mark's product identification or the tarnishment of the affirmative associations a mark has come to convey.'" Id. (citing Mead Data Cent., Inc. v. Toyota Motor Sales, U.S.A., Inc., 875 F.2d 1026, 1031 (2d Cir.1989)). Blurring occurs where "the defendant uses or modifies the plaintiff's trademark to identify the defendant's goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." Id. at 43.

> 'Tarnishment' generally arises when the plaintiff's
> trademark is linked to products of shoddy quality, or

---

does not exist. Defendants moved to dismiss pursuant to the same fictitious statute. Finally, in its memorandum of law in opposition to defendants' motion to dismiss, Red October correctly cites § 368-d with no mention of the mistake in its complaint. The parties' arguments will be evaluated on the merits under § 368-d.

is portrayed in an unwholesome or unsavory context
likely to evoke unflattering thoughts about the owner's
product.  In such situations, the trademark's
reputation and commercial value might be diminished
because the public will associate the lack of quality
or lack of prestige in the defendant's goods with the
plaintiff's unrelated goods, or because the defendant's
use reduces the trademark's reputation and standing in
the eyes of consumers as a wholesome identifier of the
owner's products or services.

Id.

Defendants do not dispute the first element of the § 368-d

dilution claim that Red October's goods are "of truly distinctive

quality or have acquired secondary meaning." See id. at 42.  In

addition, with regard to this element, Red October pleads that

"[d]efendants' actions threaten to undermine and damage the

goodwill and reputation associated with the Trademarks in the

eyes of the trade and consuming public."  Compl. ¶ 36.  This

language clearly alleges that the trademarks in which Red October

has an interest are of truly distinctive quality or have acquired

a secondary meaning in the eyes of the public.

Defendants argue that Red October has not made out the

second element necessary to state a dilution claim under § 368-d.

Defendants contend that tarnishment cannot occur here because

defendants are selling genuine products.[8]  Again, pursuant to the

---

[8] Defendants do not even argue that blurring did not occur.
As the second element of the § 368-d dilution claim is
disjunctive (either the blurring of a mark's product
identification or the tarnishment of the affirmative associations
a mark has come to convey), plaintiffs only need allege blurring
or tarnishment.

discussion in section 2(a) above, Red October has alleged that
defendants' goods are not genuine.  Therefore, defendants'
argument here must fail as well.

In addition, Red October has alleged facts in its complaint
that constitute both blurring and tarnishment.  Red October
alleges blurring in paragraph 41 of its complaint: "Defendants'
wrongful acts, including inter alia, their use in commerce of a
complete copy of the Trademarks . . . constitute infringement of
these registered Trademarks, causing or which are likely to cause
and/or continue to cause confusion, mistake or deception in the
minds of the trade and the purchasing public."  First, Red
October alleges that the defendants used plaintiff's trademark to
identify defendants' goods.  Second, Red October alleges that
this action caused confusion, mistake, or deception in the minds
of the purchasing public.  This language gives rise to the
inference that Red October's trademarks will lose their ability
to serve as a unique identifier of Red October's products.

Red October alleges tarnishment, amongst other places, in
paragraphs 32 and 36 of its complaint.  In paragraph 32, Red
October alleges that "[d]efendants sell product which is not
properly stored, which is expired and which in countless other
ways fails to comply with Red October's quality standards."  This
allegation, combined with Red October's allegation in paragraph
36, that "[d]efendants' actions threaten to undermine and damage

the goodwill and reputation associated with the Trademarks in the eyes of the trade and the consuming public," serves to effectively plead that "plaintiff's trademark is linked to products of shoddy quality," and "the trademark's reputation and commercial value might be diminished because the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods," which constitutes tarnishment. See Deere & Co., 41 F.3d 39 at 42. Therefore, Red October has stated a claim under N.Y. Gen. Bus. Law § 368-d, and defendants' motion to dismiss the claim is denied.

**g.   Plaintiff's claim for tortious interference**

Defendant argues that Red October has failed to state a claim for tortious interference with a contract. However, Red October has stated a claim for tortious interference with prospective business relations.

> The required elements of a cause of action for tortious
> interference with prospective business relations are as
> follows: (a) business relations with a third party;
> (b) the defendant's interference with those business
> relations; (c) the defendant acted with the sole
> purpose of harming the plaintiff or using wrongful
> means; and (d) injury to the business relationship.

Advanced Global Tech. LLC v. Sirius Satellite Radio, Inc.,
N.Y.S.2d., 2007 WL 764710 (Sup. Ct. New York County March 8,
2007).  On its face, paragraphs 66 and 67 of Red October's

complaint make out a claim under these elements. ¶ 66 makes out the first three elements:

> Defendants, aware of Plaintiff's valid licensing agreements and business relationships with various customers, through collusion, and tortious and malicious acts, interfered with a reasonably expected contractual advantage between Red October and its licensor as well as between Red October and its buyers and consumers, who would have entered contracts with Red October but for the Defendants' deceitful and malicious conduct complained of herein.

¶ 67 makes out the fourth and final element: "By reason of the foregoing, Red October has sustained damages in a sum to be determined at a trial of this action." Therefore, defendants' motion to dismiss this claim is denied.

## Conclusion

For the foregoing reasons, the motion by defendants to dismiss Red October's claims for lack of standing under 12(b)(1) and failure to state a claim under 12(b)(6) is denied.


Dated: Brooklyn, NY
       March 29, 2007

                              SO ORDERED:


                              _____/s/_____
                              David G. Trager
                              United States District Judge